WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bradley Schroeder,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>M & I Bank, FSB, et al.,<br><br>　　　　Defendant. | No. CV-08-2190-PHX-ROS<br><br>**OPINION** |

On March 13, 2009 this Court denied Plaintiff's Motion for a Temporary Restraining Order. The reasons for the decision follow.

## BACKGROUND

Plaintiff Bradley Schroeder brought suit to enjoin foreclosure on his home in Cave Creek, alleging a violation of his right to rescind the mortgage contract. He refinanced his home in August, 2007, ostensibly for the purpose of making improvements on it. At that time, the residence was apparently appraised at $1,330,000. Plaintiff claims Defendants failed to make disclosures required under the Truth in Lending Act ("TILA") and federal regulations. Defendants scheduled foreclosure to take place on December 9, 2008; Schroeder filed suit on December 1, 2008. Defendants temporarily delayed foreclosure, which is now scheduled for March 17, 2009, causing Plaintiff to file a Motion for a Temporary Restraining Order. A Motion to Dismiss has been filed but not yet ruled on.

STANDARD OF REVIEW

The standard for issuing a Temporary Restraining Order ("TRO") is the same as that for issuing a preliminary injunction. Gonzalez v. State, 435 F. Supp. 2d 997, 999 (D. Ariz. 2006). In the Ninth Circuit, there are two sets of criteria for a court to use when evaluating a request for a TRO. First, a plaintiff must show:

> (1) a strong likelihood of success on the merits,
>
> (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted,
>
> (3) a balance of hardships favoring the plaintiff, and
>
> (4) advancement of the public interest (in certain cases).

Earth Island Inst. v. U.S. Forest Serv., 351 F.3d 1291 (9th Cir. 2003) (quoting Johnson v. Cal. State Bd. Of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995). Alternately, a plaintiff may "demonstrate[] '*either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor'" Id. These two tests represent a continuum; "[t]hus, the greater the relative hardship to [Plaintiffs] the less probability of success must be shown." Earth Island, 351 F.3d at 1298.

ANALYSIS

A. Likelihood of Success on the Merits

i. Standing

Defendants argue Plaintiff lacks standing because TILA applies only to "consumer credit transactions," defined as transactions in "which the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1602(h). TILA does not apply to "[c]redit transactions involving extensions of credit primarily for business . . . purposes." 15 U.S.C. § 1603(1). Schroeder has stated – and apparently stated in his loan application – that he intended to use the money to make exterior improvements to his house, and to perform landscaping. This would put his use of the money squarely within the ambit of the statute.

1 However, a property evaluation that M&I obtained to estimate its losses did not
2 reflect substantial improvements to the property. Def. Ex. 1, Roberts Decl. The appraiser
3 recommended a significant write-down of the property value. Id. While only a drive-by
4 assessment, and while that write-down might have occurred due to plummeting home prices
5 even in the face of capital improvements, Plaintiff has failed to provide any evidence that the
6 loan was used for its intended purpose. Contrary to Plaintiff's counsel's assertion at hearing,
7 even the complaint itself fails to allege facts regarding the use of the loan moneys such that
8 standing is proper under TILA; it states only that Plaintiff is a *consumer*, see ¶ 5, rather than
9 what purpose the loan monies were put to.

10 Accordingly, Defendants have raised serious questions regarding Plaintiff's ability to
11 demonstrate standing under TILA.

12 ii. Tender

13 Defendants also argue that Plaintiff's TILA suit is futile if he cannot refund the money
14 at the time of rescission. Courts have, indeed, made this a condition of rescission.
15 Yamamoto v. Bank of N.Y., 329 F.3d 1167, 1171 (9th Cir. 2003). However, the law does
16 not necessarily require a showing that Plaintiff is able to do this, or even state that repayment
17 is an absolute requirement. See, e.g., Palmer v. Wilson, 502 F.2d 860, 863 (9th Cir. 1974)
18 ("[W]hen an obligor seeks to enforce his right of recission, as well as to recover the statutory
19 penalty and attorney fees, it is within the district court's equitable power to grant both forms
20 of relief, but to condition enforcement of the rescission order on the debtor's tender of the
21 principal of the loan received from the creditor.").

22 Here, Plaintiff has not made a showing that he is able to repay all or part of the loan,
23 which is not necessarily fatal to his claim. However, given the power of the court to
24 condition rescission on repayment, it does bear against the likelihood that this Court would
25 eventually allow rescission.

26 Plaintiff implies that rescission is a right under TILA totally independent of
27 repayment. However, this is not supported by the case law. As noted above, Ninth Circuit
28 courts have repeatedly reaffirmed the court's ability to condition rescission on repayment.

- 3 -

Other courts have decided similarly. See, e.g., Johnson v. Chase Manhattan Bank, 2007 U.S. Dist. Lexis 50569 at * 14.

### iii. Merits[1]

Schroeder alleges that Defendants failed to make required disclosures under TILA. The only specific disclosure he alleges Defedants failed to make is that the appraisal fee was inappropriately excluded from the finance charge, thus fraudulently overstating it. This charge was $695.00.

TILA includes appraisal fees on a list of items that "shall not be included in the computation of the finance charge with respect to that transaction." 15 U.S.C. § 1605(e). FIDC regulations specify that in order to be excluded, the appraisal fee must be "bona fide and reasonable." 12 CFR Part 226.4(c)(7)(iv). Further, TILA allows recission if "the amount disclosed as the finance charge does not vary from the actual finance charge by more than $35." 15 U.S.C. 1635(i)(2).

Plaintiff states that the $695.00 appraisal fee is unreasonable and not bona fide and argues that his personal inquiries set a reasonable appraisal fee at around $350. Defendants, on the other hand, note that it was prepared by an Arizona certified residential real estate appraiser and provide evidence that it was consistent with market prices for appraisal services at the time. Def. Ex. A; Def. Ex. 2, Norris Dec.

Plaintiff's conclusory statement that $695.00 is an unreasonable appraisal fee is not sufficient to raise a strong likelihood of success or even serious questions in light of Defendants' evidence to the contrary.

### B. Irreparable Harm, Balance of the Harms, and the Public Interest

Plaintiff has shown irreparable harm in that he faces losing his residence, a harm to which this Court is not insensible. Nor is it persuaded that the harm faced by Defendants in

---

[1] It is worth noting that Plaintiff's Complaint contains three counts. However, only Count One (Rescission under TILA) acts to stop foreclosure itself and thus is dealt with in this Opinion.

- 4 -

delaying foreclosure, namely potential financial risk resulting from a delayed foreclosure sale, outweighs it.

However, Plaintiff's showing on the merits is clearly not strong enough to justify granting a Temporary Restraining Order – an extraordinary remedy – in spite of the harm suffered by the Plaintiff.[2]  Plaintiff has not shown a strong likelihood of success on the merits and accordingly, the Motion for a Temporary Restraining Order is denied.

DATED this 13th day of March, 2009.

_____
Roslyn O. Silver
United States District Judge

---

[2] The eleventh hour nature of this Motion also bears against Plaintiff in the balance of the harms. Citibank, N.A. v. Citytrust, 756 F.2d 273, 276 (2d Cir. 1985). Despite knowing the risk of foreclosure since December, Plaintiff chose to wait until mid-March, immediately prior to foreclosure, to seek the intervention of this Court.